## Case No. 11,982.

### ROCKMULH v. PITTSBURGH.

[8 Pittsb. Leg. J. 146.]

Circuit Court, D. Pennsylvania. Nov. 22, 1860.

MUNICIPAL CORPORATIONS—RAILROAD-AID BONDS — INVESTMENT OF PROCEEDS—PAYMENT OF INTEREST — COUPONS PAYABLE TO BEARER — FOLLOWING STATE DECISIONS.

1. The supreme court of Pennsylvania has affirmed the power of the legislature to authorize municipal officers to bind the property of the citizens by subscription to the stock of railroad companies, and payment thereof in bonds, and the United States courts will be governed by that decision. Where the bonds issued in payment of such subscription are on their face made transferable on the books of the city, the holder of the bonds might not be able to recover the principal without such transfer. But the coupons attached, being made payable to bearer, he is entitled to recover without such transfer on the books.

2. An agreement between the city and railroad company, that the latter should pay the interest on the bonds, and that the money should be laid out on a particular part of the road, does not affect the right of the holder, if the bonds have been regularly executed and paid to the company.

3. Where the bond on its face says that the interest is to be paid on presentation of the coupons annexed, it is equivalent to making them payable to bearer.

4. It is no valid objection to the bonds that a single bond was at first issued in payment of the whole subscription, and afterwards bonds of smaller denomination were given in exchange for the single bond.

The plaintiff's claim was upon 84 coupons upon bonds of the first subscription to the Pittsburgh & Steubenville Railroad Company; 127 coupons of the second issue to the same company; 166 coupons of the Pittsburgh & Connellsville bonds, and 143 coupons of the issue to the Ohio & Pennsylvania Railroad Company.

Mr. Knox, for plaintiff.
Williams & Penny, for defendants.

GRIER, Circuit Justice (charging jury). The plaintiff's demand is founded on a large number of coupons on bonds purporting to have been issued by the city of Pittsburgh for the purpose of paying for stock in certain railroads. As each issue of those bonds purports to have been made by virtue of a special authority of the legislature, we must examine each of the four classes separately.

1. The 84 coupons from bonds issued to the Pittsburgh & Steubenville Railroad under the first subscription of $500,000 to its stock. The authority recited on these bonds for issuing them is found in Act April 21, 1852 [Laws 1852, p. 418]. These bonds purport to be transferable only on the books of the city, but the coupons for interest are made payable to bearer; the bonds not due till 1883. First. In answer to all the points made and instructions prayed on the power of the legislature to authorize the city to make such subscription and issue these bonds and coupons, you are instructed that the legislature had such authority, as settled by the supreme court of this state. Second. That the city corporation was authorized by the law to issue the bonds and coupons in the manner and form as presented to you. You have uncontradicted evidence that the mayor of the city made the proper subscription for 5,000 shares in obedience to an ordinance of the corporation, and delivered the bonds to the railroad company, that the city has the stock, and has voted on it, and that since the bonds have been sold by the railroad company the city has paid interest on two coupons of 1856 and one of 1857 to the holders of the coupons. Third. The bonds are transferable on the books of the city. If the city refuses to keep a transfer book for these bonds, and to suffer the transfer to be made, it may be compelled by a proper suit at law. A blank assignment is indorsed and signed by the president of the company, according to usual mercantile custom, in order that the holder may fill it up, and, if the action were upon the bond to recover the principal, the holder might not be entitled to sue on it without such transfer being made on the books of the city. But the coupons have been made payable to bearer, for convenience of the obligors, and to give value to the bonds in the market, and the plaintiff, as bearer, is entitled to recover the

amount due on them, with interest from the time when they became due. If you believe the testimony given by the plaintiff, and which has not been contradicted, the plaintiff is entitled to recover on these 84 coupons. Fourth. The recitals of the bonds are notice to the plaintiff, so far as the authority of the city to issue them is concerned. But their agreement with the railroad company that they should pay the interest, and their contract that the money should be laid out on a particular part of the road, cannot affect the right of the plaintiff to recover on this suit, if the bonds have been regularly made and paid to the company. The holders of them, or of the coupons, are not bound to inquire whether the money raised by sale of them has been properly expended.

2. The next class of bonds is the issue for a further subscription to the same railroad company. The authority for the subscription and issue of the bonds is found in the act of assembly of May 8, 1854 [Laws 1854, p. 709], which authorizes the city of Pittsburgh to subscribe, in addition to that already made, 6,000 shares of stock to the Pittsburgh & Steubenville Railroad Company, and to borrow money for that purpose, and make provision for the payment of principal and interest, and to issue certificates of loans, or bonds with coupons attached. You have in evidence an ordinance of the city authorizing such subscription, the original subscription, and the records of the city,—showing that they have the stock thus subscribed for; that the bonds were executed and delivered in payment of the stock, which is held and voted on by the city authorities; that bonds and coupons, given in evidence, were duly executed by the officers of the city, and delivered to the railroad company in payment of the stock; and that the city has paid three instalments of interest to the holders of the coupons. This testimony is uncontradicted, and the facts proved by the plaintiff have not been denied. and, if believed by the jury, entitle the plaintiff to recover the 127 coupons declared on and put in evidence before you.

3. The third class of coupons is those on bonds issued to the Pittsburgh & Connellsville Railroad Company. There are, in all, 166 coupons. The last case tried between Dobbin and the city, was wholly founded on these bonds, and it has been agreed that the testimony given in that case be transferred to this case, as, also, the offers of testimony rejected by the court, to which bills of exception were noted. The court instruct you now, as they did the jury in that case, that the authority to issue such bonds, under the acts of assembly, was sufficient; that the execution of the bonds, the subscription of stock, and delivery of the bonds, as proved and not denied, if believed by the jury, entitle the plaintiff to recover, notwithstanding the several objections made by defendant's counsel, and overruled. And so the court instructs you in this case; and that the fact that the railroad company have not laid out the money raised on these bonds on this end of the road, as at first contemplated, but have connected the road with the city by means of the Central Railroad, cannot affect the right of the plaintiff to recover in this case.

4. The bonds issued for stock in the Ohio & Pennsylvania Railroad Company. The city ordinance for subscription for stock in this railroad (April 25, 1849), and authorizing bonds to issue in payment thereof, claims to be authorized by the act of assembly of April 5, 1849 [Laws Pa. 1849, p. 360]. (Reads act.) This is undoubtedly a piece of slovenly legislation, but I believe the city councils have not erred in their construction of it. The first section exempts from taxation any bonds which may hereafter be issued by the city of Pittsburgh in payment of any bonds for any subscription hereafter to be made to the capital stock of the Ohio & Pennsylvania Railroad Company. The second section authorizes the subscription. The collocation of the sections cannot affect the construction, and there can be no doubt that the act contemplates an issue of bonds, and that the city had authority to issue them. A city ordinance of 1850 orders the bonds to be made payable in New York, and the coupons also. The coupons are in the form of warrants, without saying to whom payable, but the bond says the interest is to be paid on presentation of the coupon annexed. This is equivalent to making them payable to bearer. It is not denied that these bonds and coupons are duly executed and delivered, and it is proved without contradiction that the city of Pittsburgh has the stock paid by them, and received several dividends exceeding the interest paid on these bonds. The attempt to repudiate these bonds after the road is made, the stock received, and large dividends received in the treasury of the city, reflects little credit on this defense. One hundred and forty-three coupons are in evidence, and their execution proved; and if you believe the evidence, the plaintiff is entitled to recover the amount with interest. It is no valid objection to these bonds that, when the subscription was made, the city, having no bonds engraved, substituted for the coupon bonds a single bond, to show their indebtedness, which was held till proper mercantile bonds and coupons should be prepared and executed.

The defendant's counsel have presented a volume of instructions, or, rather, arguments, which they have requested the court to give you, but which are refused, one and all, except so far as they may be found answered in this charge. To read and answer them one by one would require much time, and only tend to confuse your minds as to your duty in this case. The instructions you have received are clear and intelligible, and all that the evidence in this case requires or justifies. The counsel for defendant except to

each and every of the instructions given as above, and to the refusal of the court to instruct the jury as requested, in each and every of the 36 prayers as heretofore annexed, and the court, at their instance, seal this bill of exceptions.

The jury then retired, and after a very brief absence found for the plaintiff in the sum of $17,601.52.